IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CRICKET COMMUNICATIONS, INC., )
)
    Plaintiff, )
) No: 3:09-0128
      v. ) Judge Trauger/Brown
)
TALK TIL YOU DROP WIRELESS, )
INC., )
)
    Defendant. )

**TO: The Honorable Aleta A. Trauger**

### REPORT AND RECOMMENDATION

      Pursuant to a referral order (Docket Entry No. 70), the undersigned conducted a hearing on July 7 and 8, 2009, on the plaintiff's motion for contempt (Docket Entry No. 52) and whether the preliminary injunction issued by Judge Trauger on March 2, 2009 (Docket Entry No. 32) should be converted to a permanent injunction. See Docket Entry No. 82. As a result of the two full days of hearing,[1] consideration of the briefs of the parties, the previous orders of Judge Trauger, and the transcripts in the matter, the Magistrate Judge **recommends** that the preliminary injunction issued by Judge Trauger on March 2, 2009 (Docket Entry No. 32) be made permanent. That preliminary injunction provided at page 2-3 that:

    (1) Defendant, any affiliates, including any other person, corporation or entity that is directly or indirectly an employee,

---

[1] TTYD and Sam Deb were represented by Mr. Pepper. Mike Deb was represented by Mr. Maness. Mr. Tadrus appeared pro se for himself and CCW.

officer, shareholder, agent or successor of Defendant, including, without limitation, Jabar Jaw Wireless, LLC, and any person or entity acting in concert with them are enjoined from directly or indirectly selling, contracting to sell or promoting the sale of any wireless telephone or wireless internet data service including, without limitation, any wireless phone, wireless internet service or service plan that offers unlimited local and/or long distance calls and/or unlimited wireless internet service for a flat price, for a period of at least six months from termination of the Premier Dealer Agreement on February 9, 2009 and within a two mile radius of any of the following store locations:

The Magistrate Judge **recommends** that the original defendant, Mike Deb, Sam Deb, as well as Chit Chat Wireless ("CCW") and Essa Tadrus be found in civil contempt, inasmuch as the Magistrate Judge concludes that they violated the preliminary injunction in this matter by continuing the sale of non Cricket items from the store operated by CCW and Essa Tadrus. The eleven stores are listed in plaintiff's Exhibit 10 numbered TTYD <u>0025</u>.[2] Nine of the stores are identical to addresses listed in the preliminary injunction (Docket Entry No. 32). The stores listed at 508 Stone Road Rochester, New York and 136 North Exchange Street, Geneva, New York appear to be within the two mile radius covered by the injunction. From the record the Magistrate Judge finds that the named defendant, Sam Deb, Mike Deb, Mr. Tadrus and CCW willfully violated the preliminary injunction. The Magistrate Judge **recommends** that the permanent injunction cover the time from July 6 for an additional six months. Additionally, the Magistrate

---

[2]Tadrus at one point testified only ten stores were in operation. He testified that all are now closed.

Judge **recommends** that the defendant TTYD, Sam and Mike Deb, Essa Tadrus and CCW be jointly and severally liable for reasonable attorney fees and expenses involved in bringing and prosecuting the motion for civil contempt.[3]

### Background

This matter was brought in the Middle District of Tennessee because the agreement signed by the original defendant, TTYD and Cricket had a venue and choice of law that prescribed the Middle District of Tennessee. While from many practical aspects it would have been far easier had this case been brought in a district in New York state which encompassed the home offices of TTYD, nevertheless the case was brought and has been prosecuted here. The District Judge has found that the contract was valid, that there was a breach of the contract, and that the plaintiff was entitled to a temporary restraining order which was later converted to a preliminary injunction. For the purpose of this report and recommendation, the Magistrate Judge will not go over the various hearings that led to the issuance of the preliminary injunction (Docket Entry No. 32) as they were all conducted before the District Judge. At this point in the proceedings, the defendant

---

[3]The Magistrate Judge has ordered a transcript of the proceedings but it is estimated that the transcript will not be prepared until after the first week of August. The Magistrate Judge has proceeded with this report and recommendation based on his recollection and notes of the hearing as well as the various pleadings. Because of the expiration of some of the terms of the preliminary injunction, the Magistrate Judge believes that it is necessary to prepare this expedited report and recommendation.

and the individuals who are a party to this proceeding have not contested the validity of the contract or the fact that the contract was violated. The Debs admit that they did in fact begin to sell Boost and other products that were in direct competition with Cricket in violation of their premier agreements with Cricket. Thus, they have not seriously contested whether the preliminary injunction should be made permanent. They have, however, vigorously contested whether they have violated the injunction after their abortive efforts to establish Jabar Jaw as a successor to TTYD. The Debs have now admitted that Jabar Jaw was set up by the Debs with Jessica Schrock as titular head to continue to sell both products at the same location. This effort lasted only until Cricket brought appropriate motions before the District Judge and the stores operated by Jabar Jaw were closed.

Immediately following the closing of the TTYD/Jabar Jaw stores, the Debs closed stores where they were able to be released from their leases. The testimony at the hearing showed that they were unable to terminate eleven leases in Rochester and the immediate area. At this point, the evidence shows that Essa Tadrus became involved and took over these eleven leases, which are listed in Exhibit 10, through a company he set up of Chit Chat Wireless. It does not appear that this company was ever formally incorporated; rather it operated as a sole proprietorship. Mr. Tadrus' testimony was that he had originally worked for the Debs in the telephone business when he was 16 years old and that he had

4

subsequently been in the cell phone business himself.  He stated
that he had then run a barbeque store starting at the age of 21 in
the Rochester area.  He said that the barbeque business had turned
out to be extremely hard work and that he was putting in 13 hours
a day of stressful work.  Also, with the downturn in the economy,
he stated that his business was down approximately 50% and that his
income had gone from close to $70,000 to $30,000.  Given the amount
of work he was having to do in the barbeque business, he had
decided it was not profitable.  His barbeque store was close to one
of the TTYD stores and he noted that it was closed on Friday.  He
then had a conversation with Sam Deb and learned that Deb had run
into difficulties and was closing the store.  He said that Deb told
him he could not sell equipment to him but that he was going to
abandon the stores and if Tadrus would take over the leases he
could do what he wanted to.  On March 2, they signed a number of
documents which Sam Deb prepared.  One, Exhibit 9, lists eleven
stores that Essa Tadrus agreed to take over.[4]  He admitted that Deb
left the store fixtures generally intact.  This included the slat
walls, the computers, the counters, the business telephones and a
few accessories.  No telephones for retail sales were left.  He
also signed the various leases that are part of Exhibit 10 and
applied for a tax ID number (Defense Exhibit 4) under the business
name of Chit Chat Wireless on March 2, 2009.  He was listed as the

---

[4]Mr. Tadrus testified that he took over ten locations but Exhibit 9 lists eleven.

5

individual sole proprietor of this business.  He stated that Chit Chat was his business solely and that he was not associated with TTYD or Jabar Jaw in any fashion and that his only responsibility to the Debs was to pay rent on the buildings.  He said that Deb was his landlord and retained the keys to the buildings.  He admitted that the stores had good locations and that the counters that were left were in good condition.  He was not sure who paid the March rent.  If he did not, Sam would have had to pay it.  Payment records for March and April were sketchy.  A couple of the smaller rents were apparently paid in cash and he stated that he did not have receipts for the small payments.  He also admitted that he had been requested to furnish certain bank account records and that it now appears that the records produced were missing some checks.  In particular, checks in plaintiff's Exhibit 56, which the plaintiff obtained from the banks, were not produced.  Among some of the Rochester checks, which were not produced, were checks the plaintiff secured from Bank of America and copied at Docket Entry No. 56.  These checks were 0991, 1002 and 1006.  All appeared to have a signature similar to Sam Deb's on them.  These were Chit Chat checks purportedly written in early March 2009.

He admitted that when he opened the stores on Monday following their being closed, he was able to use the existing computers and telephones and that none of the telephone or fax numbers were changed.

6

A good bit of testimony was given over some checks that appeared to bear Sam Deb's signature. Additionally, records were produced which showed that telephones shipped to some of the store locations under either TTYD or Jabar Jaw were received by either he or his employees, paid for and subsequently sold. He admitted that if the telephones came in, they were paid for and used in the business. Concerning checks 0991, 1002 and 1006, Sam Deb denied that he signed any of these checks. He stated that he did allow three of his managers, including Ms. Schrock, to sign his name to checks on occasion when merchandise was delivered by UPS or FedEx on a COD basis. He denied that he ever signed any CCW checks. He specifically denied that he wrote in the name "Sam Deb" with the South Salina Street address on check 0991. Ms. Schrock said that was her writing. Sam Deb did give a sample signature and wrote out that address during the course of his deposition, which is listed in Exhibit 5.

Ms. Schrock explained that she and one other manager may have inadvertently signed Sam Deb's name to some checks after CCW took over. She stated this was just force of habit, like continuing to date checks as 2008 during January 2009. There was testimony that at least some of the checks were written well into April. She thought check 1002 was signed by another manager, Ms. Garm. She said she saw Ms. Garm sign check 1006. She said she did inadvertently pay one bill of Mike Debs with a CCW check in error

7

and that he gave her $100 to repay CCW. During cross examination, she backtracked somewhat on whether or not she thought Exhibit 5 was or was not Sam Deb's writing. She admitted that while the Exhibit 5 did not look like 1002 it could be Sam's. She thought 1009 was also signed by Garm. She said she was familiar with Garm's writing. She claimed that she did the writing on 0991 and denied there was any similarity between the handwritten address at the top of the check and Exhibit 5. To the Magistrate Judge, there is a great deal of similarity with the addresses.

The plaintiff attempted to show that Sam Deb was selling Boost products from his clothing store which would be within the prohibited area. Unfortunately, plaintiff's counsel did not introduce any photographs or any detailed testimony concerning this. When Sam Deb was cross examined about the matter, he stated that they did sell a product at the clothing store which allowed an individual to add minutes to any cell phone. He said this was not a Boost product as such but was a product which allowed you to re-boost your minutes. Thus, there was a different spelling between Boost and re-boost. He testified that he did not consider this a product covered by the injunction. The injunction (Docket Entry No. 32) provides that they are prohibited from selling or promoting the sale of any wireless telephone or wireless internet data service, including without limitation, any wireless phone, wireless internet service or service plan that offers unlimited local and/or

8

long distance calls and/or unlimited wireless internet service for a flat price for a period of at least six months from the termination of the premier dealer agreement on February 9, 2009, within a two mile radius of any of a series of listed stores.  Mr. Deb contended that this was not covered by the injunction, since it was not a Boost or a Cricket plan – it was simply a convenience to customers that allowed them to recharge or add minutes to existing plans.  Given the limited information provided about this service by the plaintiffs, the Magistrate Judge is unable to conclude that this is part of a willful violation.  However, it certainly shows that Mr. Deb is willing to push the very limits of the injunction.

## Legal Discussion

The parties are in agreement that in order to find civil contempt the Court should be satisfied that the evidence is clear and convincing.  Beyond that there is little agreement.  Both parties have cited cases dealing with whether or not CCW and Essa Tadrus could be considered successors to TTYD.  Both sides have submitted a list of cases they contend support their position about successor organizations.  <u>See</u> Docket Entry Nos. 98 and 101.  There does not appear to be a case on point with the situation here.  However, there are some general rules that have been used in other cases which may be used to determine whether something should be a successor or not.  <u>Carrier Corporation v. Piper</u>, 460 F.Supp.2d 827 (W.D. Tenn. 2006) provides at 845 "The general rule is that a

9

corporation that purchases the assets of another corporation is not automatically liable for the obligation of the seller. The rule is subject to four exception in which liability will attach. . . (3) where the acquiring corporation is a mere continuation of the selling corporation, and (4) where the transaction is entered into fraudulently in order to escape liability for the obligations of the selling corporation.

Signature Combs, Inc. v. U.S., 331 F.Supp.2d 630 (W.D. Tenn. 2004) applies a five part test to a mere continuation exception and points out that an acquiring corporation will be deemed a mere continuation of the old corporation if (1) a corporation transfers its assets, (2) the acquiring corporation pays less than adequate consideration for the assets, (3) the acquiring corporation continues the selling corporation's business, (4) both corporations share at least one common officer who was instrumental in the transfer, and (5) the selling corporation is left incapable of paying its creditors.

The defendants have cited some additional cases. Gas Plus of Anderson County, Inc. v. Arowod, 1994 WL 465797 (Tenn. Ct. of App. 1994) stands for the proposition that there must be some express or implied undertaking of liabilities in the form of express or implied assumption of such debts unless the transaction amounting to a consolidation or merger of the seller and purchaser

10

and there is a mere continuation of the seller or a fraudulent transaction.

The Magistrate Judge has carefully considered this issue and believes that the evidence is clear and convincing that Essa Tadrus and CCW were in fact acting in concert with the original defendant in this matter and are covered by the injunction. Mr. Tadrus was mailed a copy of the injunction early in the proceedings and he admits it was received at his store. There were also a number of other communications to him shortly after he began the CCW business. The Magistrate Judge simply does not find the testimony of the Debs and Mr. Tadrus credible.

The timing simply does not permit that conclusion. The Debs, through TTYD, initially attempted to evade the Court's order by establishing Jabar Jaw with Ms. Schrock as titular head. In that situation, they shut down on Friday and reopened as Jabar Jaw on Monday. When Jabar Jaw was shut down, they again shut down at the end of the week and ten or eleven of the same locations opened the following Monday as Chit Chat with Tadrus as the head. It is significant to the Magistrate Judge that the evidence shows that when TTYD or Jabar Jaw closed the other stores that all of the fixtures were removed. For the stores leased to Mr. Tadrus, none of the fixtures were removed. The Magistrate Judge does not find credible the testimony that all of the equipment was either worthless or not worth the cost of removal. It is significant that

11

the same telephone numbers continued to be used. While the employees of the TTYD were at will, it appears that all of the initial employees of TTYD continued on with CCW, in particular, two of the managers, Ms. Garm and Ms. Schrock.

They used telephones shipped to TTYD or Jabar Jaw and either Sam Deb continued to sign checks or checks were signed using his name by CCW employees. The Magistrate Judge simply cannot credit testimony that this was mere inadvertence given the difficulties that were encountered by the two closings of these stores. While a coincidence is always possible, the Magistrate Judge finds it extremely difficult to believe that Mr. Tadrus by happen chance decided to convert his barbeque business to an independent telephone business as he described. The Magistrate Judge finds it to be far more credible that the Debs, having been shot down by the rather transparent ploy of Jabar Jaw, attempted to do a better job of concealing the continuation of the business this time. During the course of the hearing, numerous excerpts from the video deposition of Sam Deb, Mike Deb and Essa Tadrus were played. Additional excerpts from written transcripts were used. The Magistrate Judge found that the testimony, particularly of the Debs, was evasive and at times internally inconsistent. This added to the Magistrate Judge's belief that their testimony and the testimony of Ms. Schrock was not credible.

The Magistrate Judge believes there is sufficient evidence to believe that CCW did act in concert with TTYD to continue ten or eleven stores in violation of the preliminary injunction.

The Magistrate Judge believes that there is no doubt that the preliminary injunction should be made permanent.

For the reasons stated above and more fully demonstrated in the hearing, a transcript of which shall be prepared shortly, the Magistrate Judge finds that there was a wilful violation of the preliminary injunction. Thus, the Magistrate Judge concludes that the parties at the hearing, Mike and Sam Deb operating as TTDY and Jabar Jaw, and Essa Tadrus operating as CCW by violating that injunction committed civil contempt of the Court's order.

The Magistrate Judge believes that an appropriate sanction for such violation is to deprive these individuals of the benefit of that violation. The original injunction prohibited the operation by TTYD and its principles for a period of six months within a two mile radius of various stores. The Magistrate Judge believes that they did violate this by operating through Essa Tadrus and CCW up until July 6 when Mr. Tadrus advised that he closed all of the ten or eleven stores he was operating as CCW. In order to effectuate the original preliminary injunction, the Magistrate Judge believes that the six months should be ordered as part of the permanent injunction to run for six months from July 6.

13

Otherwise, the plaintiff will be deprived of the benefit of its bargain that upon violation of the premier dealer agreement competing products may not be sold for a period of six months within a two mile radius.

The premier dealer agreement (Plaintiff's Exhibit 3, ¶ 13c) provides among other things that

> if either party commences any action or proceeding against the other party to enforce or interpret this agreement, the prevailing party in such action or proceeding shall be entitled to recover from the other party the actual cost, expenses and attorneys' fees incurred by such prevailing party in connection with such action or proceeding and in connection with obtaining and enforcing any judgment or order thereby obtained.

As such, the Magistrate Judge further believes that reasonable attorneys' fees and costs necessitated by bringing the contempt proceedings are recoverable either under this clause or as an appropriate sanction for violation of the Court's order.

### **RECOMMENDATION**

For the reasons stated above, the Magistrate Judge **RECOMMENDS** that the preliminary injunction be converted to a permanent injunction and that the injunction include an additional six months from July 6, 2009. Further, the Magistrate Judge **RECOMMENDS** that the respondents to the contempt proceedings be found liable for reasonable attorneys' fees and expenses in prosecuting the contempt motion, as the Magistrate Judge **RECOMMENDS**

14

that the respondents be found in civil contempt of the Court's preliminary injunction (Docket Entry No. 32).

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days from service of this Report and Recommendation in which to file any written objections to this Recommendation, with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in this Report in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).

**ENTERED** this 24th day of July, 2009.

s/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge
